## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIJA SAMTUR, | ) No. CV 14-2419-AS |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## PROCEEDINGS

On April 3, 2014, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI, respectively, of the Social Security Act. (Docket Entry No. 3). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 9-10). On August 26, 2014, Defendant filed an Answer along with the Administrative Record

1

("AR"). (Docket Entry Nos. 12-13). The parties filed a Joint Stipulation ("Joint Stip.") on November, 14, 2014, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 15).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed April 4, 2014 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 18, 2010, Plaintiff, formerly employed as a caregiver and cosmetics salesperson, filed an application for Disability Insurance Benefits alleging an inability to work since September 1, 2010, due to hip, wrist, neck, and lower back problems. (Joint Stip. 2). On July 5, 2012, the Administrative Law Judge ("ALJ"), Sherwin F. Biesman, conducted a hearing and heard testimony from Plaintiff and vocational expert ("VE") Frank Corso. (AR 33-55). On August 14, 2012, the ALJ issued a decision denying Plaintiff's applications. The ALJ determined that Plaintiff had the following severe impairments: myofascial pain of the neck, back, and upper extremities, cervical spine strain, lumbar spine strain, tendonitis of the right shoulder, and tendonitis of the right elbow. (AR 23). However, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (AR 24).

On October 18, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 13-14). The request was denied on January 30, 2014. (AR 1-6). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

## PLAINTIFF'S CONTENTION

Plaintiff alleges that the ALJ erred in discounting the credibility of her subjective complaints in support of her disability claim.

## DISCUSSION

### The ALJ Properly Assessed Plaintiff's Credibility

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

3

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." <u>Id.</u>

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." <u>Smolen</u>, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." <u>Id.</u> In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Id.</u> An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." <u>Id.</u>

Here, the ALJ examined the administrative record and heard testimony from Plaintiff. Based on the record, the ALJ determined that Plaintiff had produced objective medical evidence of underlying impairments that "could reasonably be expected to cause the alleged symptoms." (AR 25). However, the ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms are not credible. (AR 18). The ALJ discounted Plaintiff's credibility based on his findings that: (1) Plaintiff did not undergo the type of treatment that is consistent with her alleged impairments; (2) her daily activities are not consistent with the alleged degree of impairment; and (3) Plaintiff's receipt of unemployment benefits indicates that she is ready, willing, and able to work and has been actively seeking employment. (AR 26).

The Court agrees with Plaintiff that some of the ALJ's reasons for discounting her testimony are not clear and convincing. First, Plaintiff testified that she was receiving unemployment benefits since September 2011 and although the payments have stopped, they are expected to resume. (AR 43-44). The ALJ used this to undermine Plaintiff's credibility and assumed that she was "ready, willing, and able to work and has been actively seeking employment." (AR 26). However, because the full record does not establish whether Plaintiff held herself out for full-time or part-time work, this factor is not a clear and convincing reason to discount Plaintiff's credibility. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th

Cir. 2008)(only holding one's self out for full-time work, as opposed to part-time work, for unemployment benefits, is inconsistent with a disability allegation).

Second, the ALJ discounted Plaintiff's testimony because he found her daily activities to be inconsistent with her allegations of pain and functional limitations. (AR 26). However, the ALJ neither questioned Plaintiff during the hearing regarding her daily activities nor properly cited to the record to determine the extent of Plaintiff's daily activities. The ALJ failed to note that Plaintiff stated, in her pain questionnaire, that she is limited to vacuuming with her left hand, whereas before she could vacuum with her right hand. (AR 192). She also stated that she could only stand for 20 minutes at a time and sit for 30 minutes at a time. (AR 193). The ALJ also failed to find that Plaintiff's daily activities were transferable to duties in a work setting. See Molina, 674 F.3d at 1113 ("the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). Accordingly, the ALJ's finding that Plaintiff's daily activities of vacuuming, shopping and

washing dishes undermined her credibility was not a clear and convincing reason to discount Plaintiff's credibility.

Despite these errors, the Court finds the ALJ's remaining reasons for rejecting the credibility of Plaintiff's subjective testimony to be clear and convincing.[1] First, the ALJ determined that Plaintiff's treatments were conservative in nature. See Parra v. Astrue, 481 F.3d 742, 750—51 (9th Cir. 2007) (conservative treatment can diminish a claimant's credibility regarding the severity of an impairment). While Plaintiff alleged a disability onset date of September 1, 2010, (AR 124), the record reveals that Plaintiff did not seek treatment for her alleged impairments until 11 months later, on August 1, 2011, although she underwent a consultative examination on April 2, 2011. From August 1, 2011 until July 9, 2012, Plaintiff met with Dr. Dini on an as-needed basis seven times, during which he prescribed her pain medications. (AR 253-60). Given Plaintiff's allegations of debilitating pain since 1999, (AR 191), the ALJ reasonably found that Plaintiff failure to seek medical treatment more frequently and earlier, at least from her alleged onset date of disability, undermined her credibility. See

---

[1] The harmless error rule applies because "remaining reasoning and ultimate credibility determination[s] were adequately supported by substantial evidence in the record." See Carmickle v. Comm'r, 533 F.3d 1155, 1162-63 (9th Cir. 2008); see also Robbins, 466 F.3d at 885 (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)) (the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'").

Smolen, 80 F.3d at 1284 (ALJ can consider failure to seek treatment or to follow a prescribed course of treatment in a credibility determination). Moreover, although the ALJ incorrectly stated that Plaintiff was taking *only* over the counter medication,[2] Plaintiff's delay in seeking both treatment and prescription medication undermine Plaintiff's claims regarding her debilitating pain and incapacity to work from the onset date. Id.

Second, the ALJ found that Plaintiff's subjective symptoms lacked support in the objective record. See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). In particular, Plaintiff's complaints of shooting pain and numbness in her lower back, elbows, wrists, and legs since 1999, (AR 191), were not supported by the consultative physical examination in April 2011. The April 2011 orthopedic examination found that, despite moderate myofascial pain in the neck and lower back, Plaintiff's upper extremities (shoulders, elbow, wrist, and hands) and lower extremities (hips, knee, and ankles) had a normal range of motion and Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (AR 207-10). An April

---

[2] Dr. Dini prescribed Plaintiff Naprelan to treat her tendinitis on August 1, 2011, Voltaren (an arthritis relief gel) on November 14, 2011, and Duexis to treat her tendinitis on March 26, 2012. (AR 253, 255, 260).

2012 Functional Capacity Assessment by Plaintiff's treating physician found that Plaintiff could sit, stand, and walk for four hours in an eight hour day and would be absent from work more than four days per month. (AR 239). A July 2012 Functional Capacity Assessment by the same doctor found that although Plaintiff could still sit, stand, and walk for four hours in an eight hour day, she would be absent from work *only* about two days per month, showing improvement from the April 2012 assessment.[3] (AR 243). The ALJ properly determined that Dr. Dini's opinion was entitled to limited weight because it was not supported by objective test results. (AR 27).

The Court finds that the ALJ provided "clear and convincing" reasons for discounting Plaintiff's testimony about the severity of her symptoms and limitations. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing.").

//
//
//
//
//
//

---

[3] Although Dr. Dini noted in progress reports dated September 12, 2011 and November 14, 2011 that Plaintiff was "permanent and stationary," his most recent progress report from March 26, 2012 did not find Plaintiff to be "permanent and stationary." (AR 253-56, 259).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 3, 2015.

```
              _____/s/_____
                        ALKA SAGAR
              UNITED STATES MAGISTRATE JUDGE
```